Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
2473 S. Higley Road
Suite 104-308
Gilbert, AZ  85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| David C. Henry; and Janet A. Henry;<br><br>    Plaintiffs,<br><br>v.<br><br>Saxon Mortgage, Inc.; Ocwen Mortgage Company, LLC; Trans Union LLC; Experian Information Solutions, Inc.; Equifax Information Services, LLC;<br><br>    Defendants. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

**I. Preliminary Statement**

1. Plaintiffs bring this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. and / or the Fair Credit Reporting

| | |
|---|---|
| 1 | Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. |
| 2 | Plaintiffs seek recovery of statutory damages, |
| 3 | actual damages, punitive damages, costs and |
| 4 | attorney's fees. |

**II. JURISDICTION**

2. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), 15 U.S.C. § 1681p (FCRA), and 28 U.S.C. § 1331. Venue lies in the Phoenix Division of the District of Arizona as Plaintiffs' claims arose from acts of the Defendants perpetrated therein.

**III. PARTIES**

3. Plaintiffs reside in Maricopa County, Arizona.
4. Plaintiffs are "consumers" as defined by FDCPA § 1692a(3) and FCRA § 1681a(c).
5. Defendant Saxon Mortgage, Inc. is a Virginia corporation conducting business within the state of Arizona.
6. Saxon is engaged in the business of collecting or attempting to collect debts after default which are owed or asserted to be owed or due another.
7. In the alternative, Saxon collects or attempts to collect debts it has purchased after default.
8. Saxon is a "debt collector" as defined by FDCPA §

1681a(6).
9. Saxon is a "person" as that term is defined by FCRA § 1681a(b).
10. Saxon is a "furnisher" of information as contemplated by FCRA §§ 1681s-2(a) and (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.
11. Defendant Ocwen Mortgage Company, LLC is a Florida corporation conducting business within the state of Arizona.
12. Ocwen is engaged in the business of collecting or attempting to collect debts after default which are owed or asserted to be owed or due another.
13. In the alternative, Ocwen collects or attempts to collect debts it has purchased after default.
14. Ocwen is a "debt collector" as defined by FDCPA § 1681a(6).
15. Ocwen is a "person" as that term is defined by FCRA § 1681a(b).
16. Ocwen is a "furnisher" of information as contemplated by FCRA §§ 1681s-2(a) and (b), who regularly and in the ordinary course of business furnishes information to one or more consumer

reporting agencies about consumer transactions or experiences with any consumer.

17. Trans Union, LLC is a Delaware limited liability company conducting business within the state of Arizona.

18. Defendant Trans Union is a "person" as that term is defined by FCRA § 1681a(b).

19. Trans Union is a "consumer reporting agency" as that term is defined by FCRA § 1681a(f).

20. Experian Information Solutions, Inc. is an Ohio corporation conducting business within the state of Arizona.

21. Experian is a "person" as that term is defined by FCRA § 1681a(b).

22. Experian is a "consumer reporting agency" as that term is defined by FCRA § 1681a(f).

23. Defendant Equifax Information Services LLC is a Georgia limited liability company conducting business within the state of Arizona.

24. Equifax is a "person" as that term is defined by FCRA § 1681a(b).

25. Equifax is a "consumer reporting agency" as that term is defined by FCRA § 1681a(f).

**IV. Factual Allegations**

26. Plaintiffs filed chapter 13 bankruptcy in the

1. District of Arizona on September 15, 2006.
2. 27. Prior to filing bankruptcy, Plaintiffs had relocated from New York State to Arizona, and had abandoned their home in Springville, New York.
3. 28. The Springville home had a mortgage against it owed to or serviced by Novastar Mortgage, Inc.
4. 29. Plaintiffs listed Novastar in their bankruptcy case as a secured creditor holding a mortgage against their former home in Springville, New York.
5. 30. While the bankruptcy case was pending, Novastar started foreclosure proceedings against the Springville home without obtaining proper authorization from the bankruptcy court.
6. 31. As a result of Novastar's actions, Novastar paid $50,000 into Plaintiffs' chapter 13 plan, as a sanction for a sanction for violating the bankruptcy stay.
7. 32. At the time of filing, Plaintiffs also listed H&K Publications and C.A. Curtze Company as unsecured creditors in their bankruptcy case.
8. 33. H&K Publications had obtained a judgment against Plaintiffs on or about July 2006.
9. 34. C.A. Curtze Company had also obtained a judgment against Plaintiffs on or about November 2005.

35. Plaintiffs received a discharge in their bankruptcy case on September 17, 2008.
36. However, while the bankruptcy was still pending, Novastar purportedly sold or assigned the mortgage or the servicing of the mortgage to Saxon.
37. Upon first learning that Saxon had taken over the mortgage, Plaintiffs sent Saxon a letter on July 20, 2009 stating that the account had been included and discharged in their bankruptcy on September 17, 2008, and requesting that Saxon correct its erroneous reporting of the account to the credit bureaus.
38. Despite receiving Plaintiffs' July 20, 2009 letter, Saxon continued to send letter to Plaintiff concerning the mortgage account.
39. On November 7, 2009, Saxon mailed Plaintiffs a letter concerning their failure to maintain hazard insurance on the Springville property.
40. On November 16, 2009, Saxon mailed Plaintiffs notice that the servicing of their mortgage was being transferred from Saxon to Ocwen effective December 1, 2009.
41. On December 7, 2009, Ocwen sent Plaintiffs a letter titled "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVING RIGHTS."

42. On December 22, 2009, Ocwen sent Plaintiffs another letter stating in part "In accordance with the provisions of your mortgage, we are required to have property inspections completed on all delinquent loans."

43. After receipt of the December letters from Ocwen, Plaintiffs faxed Ocwen copies of their list of creditors from their bankruptcy case showing that Novastar was properly listed as a secured creditor, and also a copy of their discharge order.

44. Despite receipt of Plaintiffs' fax, Ocwen sent Plaintiffs a letter dated April 17, 2010 stating that they had obtained a hazard insurance policy on the property and that the premium for this policy will be charged to the account.

45. On June 26, 2010, Ocwen sent a certified letter to Plaintiffs concerning the alleged delinquency on the mortgage.

46. In the June 26, 2010 letter, Ocwen stated: "YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY."

47. Ocwen also stated in the letter that:

> "As of June 26, 2010, your home loan in 1991 days in default under NY State Law we are required to send you this

|   |     |                                                                 |
|---|-----|-----------------------------------------------------------------|
| 1 |     | notice to inform you that you are at                            |
| 2 |     | risk at losing your home. You can cure this default by making the payment of |
| 3 |     | 151,713.20 Dollars by 09/23/2010"                               |
| 4 | 48. | The letter also stated that: "If this matter is                 |
| 5 |     | not resolved within 90 days from the date this                  |
| 6 |     | notice was mailed we may commence legal action                  |
| 7 |     | against you (or sooner if you cease to live in the              |
| 8 |     | dwelling as your primary residence.)"                           |
| 9 | 49. | On June 26, 2010, Ocwen sent a second letter via                |
| 10|     | certified mail to the Plaintiffs concerning the                 |
| 11|     | alleged arrearage on the mortgage.                              |
| 12| 50. | Ocwen stated in this letter that "this is a notice              |
| 13|     | of default."                                                    |
| 14| 51. | In the letter, Ocwen also stated: "Your mortgage                |
| 15|     | payments are past due, which puts you in default                |
| 16|     | of your loan agreement. As of June 26, 2010 you                 |
| 17|     | owe the following;... total due $147,730.16."                   |
| 18| 52. | On July 22, 2010 Plaintiffs sent Ocwen a letter                 |
| 19|     | requesting proof that the account they were                     |
| 20|     | reporting to the credit bureau was owed.                        |
| 21| 53. | Plaintiff's also notified Ocwen in this letter                  |
| 22|     | that the home had been transferred to Novastar                  |
| 23|     | Mortgage on November 5, 2007 through a Bargain and              |
| 24|     | Sale Deed, or deed in lieu of foreclosure, as part              |
| 25|     | of the settlement in the chapter 13 bankruptcy                  |

- 8 -

1  proceedings.
2  54. On August 6, 2010 Ocwen sent plaintiff's a
3      response to their letter stating that they are
4      correctly reporting the account to the credit
5      bureau's as payments on the loan had not been sent
6      on time.
7  55. Ocwen failed to address in is August 6, 2010
8      letter the fact that the property had been
9      transferred to Novastar in lieu of foreclosure in
10     November 2007, and that there was no longer any
11     mortgage.
12 56. On July 21, 2010, Plaintiffs obtained copies of
13     their credit reports from Experian, Equifax, and
14     Trans Union.
15 57. Each of Plaintiff David Henry's credit reports
16     showed that Ocwen was reporting the account as
17     past due with a balance owing, and with a notation
18     that the account was included in a foreclosure
19     proceeding.
20 58. Plaintiff David Henry's Experian credit report
21     also showed the Saxon had reported the mortgage to
22     Experian as a delinquent account beginning March
23     2008 and continuing through September 2008.
24 59. Saxon also included in its report to Experian the
25     notation that the debt was "Included in or

1 discharged through bankruptcy chapter 13."
60. Each of Plaintiff Janet Henry's credit reports showed that Ocwen was reporting the mortgage with a past due amount notation and that the mortgage was involved in a foreclosure proceeding.
61. Plaintiff Janet Henry's Experian and Equifax credit reports both showed that Saxon Mortgage was reporting the account as delinquent beginning February 2008 through November 2009.
62. There is no notation in either the Experian or the Equifax credit reports that Saxon had reported the account as included in Bankruptcy.
63. Between November 2008 and July 21, 2010, Plaintiffs sent several letters each to Trans Union, Experian and Equifax disputing the reporting of the Ocwen and /or Saxon tradeline on their credit reports.
64. Upon information and belief, Equifax received copies of Plaintiffs' dispute letters.
65. Upon information and belief, Equifax contacted Ocwen and / or Saxon concerning Plaintiffs' disputes of its tradeline.
66. Upon information and belief, Experian received copies of Plaintiffs' dispute letters.
67. Upon information and belief, Experian contacted

Ocwen and / or Saxon concerning Plaintiffs' disputes of its tradeline.
68. Upon information and belief, Trans Union received copies of Plaintiffs' dispute letters.
69. Upon information and belief, Trans Union contacted Ocwen and / or Saxon concerning Plaintiffs' disputes of its tradeline.
70. Despite their multiple disputes to the consumer reporting agencies, Ocwen and / or Saxon continued to report derogatory and erroneous credit information about Plaintiffs to each of the consumer reporting agencies.
71. On July 21, 2010, Plaintiffs sent a letter to Equifax disputing several items listed in their credit report including the Ocwen tradeline and the Saxon tradeline.
72. Equifax responded on August 17, 2010.
73. In its response Equifax stated that the Saxon account had been updated to show "Included in a wage earner plan" from February 2008 - November 2010.
74. In its response, Equifax also stated that the Ocwen loan continues to report 120 days past due with no mention that the account was included in a bankruptcy.

75. Defendants have continued to report inaccurate, derogatory and improper information, and have failed to retract, delete and/or suppress inaccurate, derogatory and improper information about the Plaintiffs, as described more fully herein.
76. As a result and proximate cause of Defendants' actions, Plaintiffs have suffered actual damages, including, but not limited to, loss of credit opportunities, denial of credit, and emotional distress.

## V. Causes of Action

### a. Fair Debt Collection Practices Act

77. Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.
78. Defendants Saxon's and Ocwen's violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692e, and 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and/or 1692g.
79. As a direct result and proximate cause of Defendants Saxon and Ocwen's actions in violation of the FDCPA, Plaintiffs have suffered actual damages.

### a. Fair Credit Reporting Act

80. Plaintiffs repeat, re-allege, and incorporate by

1  reference the foregoing paragraphs.
81. Defendants Saxon and Ocwen each failed to conduct a reasonable investigation of Plaintiffs' disputes they received from Trans Union, Experian and / or Equifax concerning their reporting of the mortgage account, and otherwise failed to comport with FCRA § 1681s-2(b).
82. As a result of Defendants Saxon's and Ocwen's actions, Plaintiffs have been damaged.
83. Defendants Trans Union, Experian and Equifax each failed to conduct a reasonable investigation of Plaintiffs' disputes, and otherwise failed to comport with FCRA § 1681i.
84. Defendants Trans Union, Experian and Equifax have continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about Plaintiffs which was inaccurate, false, erroneous and misleading despite notice from Plaintiffs that such information was inaccurate.
85. Defendants Trans Union, Experian and Equifax have willfully, or alternatively, negligently, violated FCRA § 1681i.
86. As a direct result and proximate cause of Trans Union's, Experian's and Equifax's continued

- 13 -

reporting of erroneous and adverse information on Plaintiffs' credit reports, Plaintiffs have suffered and continue to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, credit denial, higher interest rates, higher insurance rates, and / or loss of opportunity.

87. As a result of Defendants' negligent failure to comply with the FCRA, Defendants are each liable to Plaintiffs in an amount equal to the sum of (1) any actual damages sustained by Plaintiffs as a result of said failure and (2) the costs of this action together with reasonable attorneys' fees.

88. As a result of Defendants' willful failure to comply with the FCRA, Defendants are liable to Plaintiffs in an amount equal to the sum of (1) any actual damages sustained by Plaintiffs as a result of the failure, or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (2) such amount of punitive damages as the court may allow; and (3) the costs of this action together with reasonable attorneys' fees.

### VI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants for:

a) Actual damages under the FCRA, or in the alternative, statutory damages of $1,000 per violation pursuant to FCRA § 1681n;

b) Actual damages under the FDCPA;

c) Statutory damages under the FDCPA;

d) Punitive damages pursuant to FCRA § 1681n;

e) Costs and reasonable attorney's fees pursuant to FDCPA § 1692k and FCRA §§ 1681n and/or *o*;
and

f) Such other relief as may be just and proper.

DATED  November 24, 2010 .

s/ Floyd W. Bybee
Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
2473 S. Higley Road
Suite 104-308
Gilbert, AZ  85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs